## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>MOTION TO QUASH SUBPOENA | Miscellaneous Case No. 22-mc-00008-RM |

## EXPEDITED MOTION FOR ORDER TRANSFERRING
## SUBPOENA-RELATED MOTION TO ISSUING COURT

Respondents Amazon.com, Inc. and Amazon Data Services, Inc. (together, "Amazon"), who are Plaintiffs in the Virginia litigation that gave rise to the non-party subpoena underlying movant Rodney Atherton's motion to quash, respectfully request that the Court exercise its authority under Federal Rule of Civil Procedure 45(f) to transfer proceedings on the motion to quash to the issuing court in the Eastern District of Virginia. The subpoena seeks records that relate to Mr. Atherton's representation of clients who are named defendants in a 2020 federal civil racketeering and fraud case in Virginia. The racketeering and fraud case arises out of the same facts as parallel government proceedings against the defendants in Virginia, including an ongoing criminal investigation. In recent weeks, it appeared possible that the litigation in Virginia would be stayed in its entirety. However, discussions regarding a stay have broken down, and privilege briefing in that action is imminent. Transfer is warranted under Rule 45(f) because the arguments raised by the motion to quash go to disputed issues at the heart of the underlying litigation, because the motion to quash is based on privileges that belong to the named defendants in the Virginia case, and because identical privilege issues will be litigated in that action with respect to many of the same documents.

## STATEMENT OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1, counsel for Amazon contacted counsel for movant Rodney Atherton on February 10 and February 11, 2022 regarding the requested relief. Counsel for Mr. Atherton stated on February 11, 2022 that Mr. Atherton opposes the relief.

## STATEMENT OF FACTS

### A. The Underlying Litigation

For nearly two years, Amazon has been litigating a multi-party racketeering and fraud action against two former Amazon employees and co-defendants who engaged in a kickback enterprise that targeted more than $500 million of Amazon real estate transactions in Northern Virginia. *See Amazon.com, Inc. et al. v. WDC Holdings et al.*, No. 20-cv-484 (E.D. Va.) ("EDVA Civil Action").[1] The EDVA Civil Action is pending in the same Virginia district where the defendants have brought actions contesting various government proceedings. *See United States v. $196,634 Seized from Citywide Bank Account Ending in 9662 et al.*, No. 21-cv-561 (E.D. Va.); *United States v. Real Property & Improvements Known as 35 Queensland Lane North, Plymouth, Minnesota 55447*, No. 20-cv-613 (E.D. Va.). The defendants to the EDVA Civil Action and various government proceedings in Virginia include Mr. Atherton's clients, who own the privileges he has raised as grounds for asking this Court to quash the non-party subpoena issued in the EDVA Civil Action.[2]

---

[1] Citations to "ECF No. __" refer to docket entries in this proceeding. Citations to the docket in the E.D. Va. proceeding are noted as "E.D. Va. ECF No. __."

[2] Mr. Atherton's current and former clients include Casey Kirschner, Carleton Nelson, Christian Kirschner, Demetrius Von Lacey, AllCore Development LLC ("AllCore Development"), Cheshire Ventures LLC ("Cheshire Ventures"), Finbrit Holdings LLC ("Finbrit Holdings"), the 2010 Irrevocable Trust ("2010 Irrevocable Trust"), and the Villanova Trust ("Villanova Trust"). ECF

That litigation is complex and advanced. In 2020, the District Court in Virginia concluded that Amazon was likely to succeed on its claims and entered a preliminary injunction barring some of the defendants from spoliating evidence and dissipating assets. *Amazon.com, Inc. v. WDC Holdings LLC*, 2020 WL 4353563 (ED Va. July 28, 2020). That injunction was unanimously affirmed by the United States Court of Appeals for the Fourth Circuit. *Amazon.com. Inc. v. WDC Holdings LLC*, 2021 WL 3878403 (4th Cir. Aug. 31, 2021). The EDVA Civil Action is now in full merits discovery, which is scheduled to close on March 18, 2022, with a final pre-trial conference date of April 14, 2022. E.D. Va. ECF No. 455.

Mr. Atherton is a Colorado attorney who assisted the former Amazon employees in setting up trusts and other shell entities used to facilitate the fraud and racketeering scheme at issue in the EDVA Civil Action and related government proceedings.[3] E.D. Va. ECF No. 150, ¶ 99. The operative complaint, which survived motions to dismiss and transfer and is now in merits discovery, alleges that those former employees "knowingly participated in this scheme and hired Mr. Atherton specifically to facilitate this scheme." *Id.* ¶ 100; *see also id.* ¶¶ 6, 10. Mr. Atherton created a sham trust, the Villanova Trust, controlled by the former Amazon employees (and their coconspirator), who were the principals of the kickback scheme. *Id.* ¶ 25. That trust formed a "referral agreement" with real estate developers, who then funneled a portion of the payments

---

No. 1, ¶ 9. Casey Kirschner, Carleton Nelson, the Villanova Trust, AllCore Development, Cheshire Ventures, and Finbrit Holdings are named defendants in the EDVA Civil Action. E.D. Va. ECF No. 150, ¶¶ 17–21, 24–28, 36–44. The others are individuals or entities that have emerged as central to the facts at issue in the EDVA Civil Action.

[3] The fraud scheme also is the subject of a federal criminal investigation, which is proceeding concurrently with the EDVA Civil Action. Federal authorities have seized bank accounts held in Mr. Atherton's name in forfeiture proceedings related to the criminal investigation of the kickback scheme. E.D. Va. ECF No. 162-5.

received from Amazon back to the trust for distribution to Mr. Atherton's clients. *Id.* ¶ 25. Mr. Atherton also created a number of Wyoming LLC entities controlled by the kickback defendants and used to "facilitate and conceal their illicit gains," including AllCore Development LLC, Cheshire Ventures LLC, and Finbrit Holdings LLC. *Id.* ¶¶ 37–44. The defendants used this "network of shell entities," organized by Mr. Atherton, to conceal evidence of their scheme. *Id.* ¶ 94.

### B. The Subpoena and Motion to Quash

As part of general discovery in the underlying litigation, Amazon has issued a subpoena demanding documents relevant to the case from Mr. Atherton. ECF No. 1-2, at 9–11. The defendants' initial disclosures in the EDVA Civil Action identify Mr. Atherton as a person who has discoverable information that the defendants may use to support their merits claims or defenses, including the role of the Villanova Trust in the alleged kickback scheme, proposed agreements between certain co-conspirators, and the development work allegedly completed by entities involved in the challenged scheme. Ex. 1, at 12; Ex. 2, at 11; Ex. 3, at 6.[4] Amazon's subpoena properly seeks this and other information that the EDVA Civil Action defendants have indicated is in Mr. Atherton's possession, custody, or control, and that those defendants may use to support their case. *See* ECF No. 1-2, at 9–11.

On January 13, 2022, counsel for Mr. Atherton responded by filing the motion to quash the subpoena, on the ground that the requests in the subpoena would require the production of documents and/or communications relating to certain of Mr. Atherton's current or former clients. Every one of those purported clients is implicated in the racketeering and fraud scheme at issue in the

---

[4] All "Ex." citations refer to the Declaration of Amanda J. Sterling in Support of Amazon's Expedited Motion for Order Transferring Subpoena-Related Motion to Issuing Court.

underlying litigation in the Eastern District of Virginia, as is Mr. Atherton himself. *E.g.*, E.D. Va. ECF No. 150, ¶¶ 38, 99–108, 174, 443–450.  Mr. Atherton's counsel did not confer with counsel for Amazon to attempt to resolve the disputed issues before filing the motion, as required by applicable rules.  *See* D.C.COLO.LCivR 7.1.

### C. Related Discovery Ongoing in the Eastern District of Virginia

Although the defendants in the underlying litigation have produced certain of their communications with Mr. Atherton and have identified him in their initial disclosures, they also have objected on privilege grounds to producing certain information relating to Mr. Atherton.  *See, e.g.*, Ex. 4, at 3–11; Ex. 5, at 4–29.  The document requests to the defendants and to Mr. Atherton in the non-party subpoena he has moved to quash in this Court concern transactions that were foundational to the kickback scheme described in Amazon's complaint, as well as entities that Amazon has alleged were created to further and conceal the defendants' fraudulent enterprise.  *See* Ex. 4, at 2–11; Ex. 5, at 4–28; ECF No. 1-2, at 9–11.  Defendants' objections to responding to these discovery requests raise complex and fact-intensive questions about (a) the scope of any valid claims of privilege based on the defendants' relationship with Mr. Atherton, (b) the existence and implications of any client waiver(s), and (c) the applicability of exceptions to the privilege, including the crime-fraud exception.  The parties must present these and related issues to the Court in the EDVA Civil Action prior to the March 18, 2022 deadline for fact discovery, and in coordination with ensuing deadlines for summary judgment and the final pre-trial conference in April 2022. E.D. Va. ECF No. 455.

## ARGUMENT

Federal Rule of Civil Procedure 45 provides that, while a motion to quash a subpoena is properly filed in the district where compliance is required, that court "may transfer a motion [to quash] to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).

Because the Rule does not define "exceptional circumstances," courts "applying Rule 45(f) routinely refer to the 2013 Advisory Committee Note's language in determining its scope." *Schell v. Amendia, Inc.*, 2021 WL 1541712 (D. Colo. Apr. 20, 2021) (quoting *US Plywood Integrity Coal. v. PFS Corp.*, 2021 WL 409968, at *2 (W.D. Wash. Feb. 5, 2021) (collecting cases) (alteration omitted)). The Note explains the Committee's view that transfer is appropriate "to avoid disrupting the issuing court's management of the underlying litigation, as when . . . *the same issues are likely to arise in discovery*" proceedings in multiple districts. Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment (emphasis added). "When considering if exceptional circumstances are present, the Court must account for the *complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation*." *Schell*, 2021 WL 15417172, at *3 (quoting *Google, Inc. v. Digital Citizens Alliance*, 2015 WL 4930979, at *2 (D.D.C. July 31, 2015) (emphasis added)).

Resolution of Mr. Atherton's motion to quash implicates all of the foregoing grounds for transfer. The motion will require rulings not only on the asserted legal privileges, but also on whether any waiver or exception to the privilege applies. These waiver scenarios (and particularly third-party disclosure, sword/shield, and crime-fraud waiver doctrines) will in turn require fact-intensive examination of how the defendants have disclosed or affirmatively asserted the allegedly

6

privileged information in the EDVA Civil Action and related Virginia proceedings. Courts in this district have not hesitated to transfer such motions on the grounds that the issuing court is better suited to adjudicate claims of privilege.

Notably, in *Weddle v. Williams*, this Court transferred a motion to quash back to the Eastern District of Virginia, the issuing court for the subpoena, where the parties were litigating allegations that a defendant had "engaged in a 'criminal enterprise'" involving "a payday lending scheme." 2019 WL 1620815, at *1 (D. Colo. Apr. 15, 2019). There, as here, plaintiffs served a Rule 45 subpoena on a Denver attorney, who moved to quash. *Id.* at *2. The Court ordered transfer on three grounds. *First*, the Court stated that it did "not wish to potentially create—through independent, conflicting rulings . . . —a situation that render[ed] [certain information] permanently undiscoverable." *Id.* at *4. *Second*, the "Court, despite significant effort, ha[d] struggled to gain an understanding of the more nuanced facts as well as the progress of the underlying litigation, which [then] comprise[d] 463 docket entries." *Id.* at *5. The Court thus "consider[ed] itself poorly positioned to accurately rule on Movant's Motion to Quash." *Id. Third*, the Court "conclude[d] that a comparatively minimal burden on Movant weigh[ed] in favor of transferring the present case to the Eastern District of Virginia," not only because there would likely be "only minimal modifications to already-filed briefs," but also because of "the regularity of appearances by telephone." *Id.*

So, too, in *Schell*, "an attorney who live[d], work[ed], and practice[d] law in Denver, Colorado" moved for a protective order relating to a Rule 45 subpoena that a Georgia defendant had served. 2021 WL 1541712, at *1–2. The Court transferred the motion to the originating court for three reasons. *First*, the underlying case had "been pending for over three and a half years and

7

involve[d] the interpretation of three separate royalty agreements." *Id*. at *3. The judge in the underlying case had "already resolved a Motion to Dismiss and ha[d] conducted five discovery hearings." *Id*. *Second*, resolving the motion would require the Court "to educate itself about the complex claims . . . at issue in the Underlying Case," whereas the underlying judge "already ha[d] a detailed understanding of the claims and technology at issue." *Id*. at *4. *Third*, transfer would "assist in avoiding the disruption of [the underlying judge's] management of the Underlying Case," as discovery in that case was "set to close" within two months. *Id*. The Court emphasized that the underlying judge could "more quickly and efficiently resolve the instant Motion and thus avoid or limit disruption to the current schedule in the Underlying Litigation." *Id*. at *5; *see also San Juan Cable LLC v. DISH Network LLC*, 2015 WL 500631, at *1 (D. Colo. Jan. 23, 2015) (transferring motion to quash where "[t]he issuing court is already weighing very similar questions . . . in the motion to enforce [a related subpoena], and it makes eminent sense for that court to resolve both subpoena motions together").

The same considerations that governed in *Schell* and *Williams* support transfer here. As an initial matter, Mr. Atherton's motion to quash asserts privileges that do not belong to him, but to clients who are principal defendants in the EDVA Civil Action and related Virginia proceedings. Claims of privilege may be maintained or waived "*by the client*, who holds the privilege." *AAA Nat. Maint. v. City & Cnty. of Denver*, 2009 WL 3233710, at *1 (D. Colo. Oct. 7, 2009) (emphasis added); *see also Catholic Health Initiatives Physician Servs., LLC v. Medsynergies, LLC*, 2019 WL 13089594, at *5 (D. Colo. Feb. 19, 2019). And while Mr. Atherton may raise these privileges in his motion to quash, the Court may only grant such a motion if *those defendants* wish to maintain the privilege *and* they and Mr. Atherton can substantiate them, including against waiver

8

doctrines—such as third party disclosure, sword/shield, and crime-fraud—that are inextricably entwined with the facts, merits defenses, and privilege claims that will be litigated in the EDVA Civil Action from now through April 2022.[5]  As courts in this district have recognized, "an attorney cannot 'invoke the privilege for his own benefit when his client desires to waive it.'" *Bovino v. MacMillan*, 28 F. Supp. 3d 1170, 1177 (D. Colo. 2014) (quoting *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 556 (2d Cir. 1967)).  Because the individuals and entities to whom the privilege belongs are already litigating the action in Virginia with the benefit of a well-developed factual record familiar to that court, denying transfer would merely impose on Mr. Atherton's clients—Carleton Nelson, Casey Kirschner, Christian Kirschner, Demetrius Von Lacey, AllCore Development, Cheshire Ventures, Finbrit Holdings, the 2010 Irrevocable Trust, and the Villanova Trust—the burden of duplicative litigation in this Court.  *See id.*

Indeed, without transfer, the prospect of improper and inefficient duplicative and parallel litigation of the same issues is unavoidable.  *See Williams*, 2019 WL 1620815, at *4.  The same questions of attorney-client and attorney work product privilege over *many of the same documents* will be litigated in parallel in both Colorado and Virginia if transfer is denied.  Mr. Atherton's clients are subject to discovery requests in the EDVA Civil Action that seek many of the same documents that are likely within Mr. Atherton's possession, *see* Ex. 1, at 12; Ex. 2, at 11; Ex. 3, at 6, and to which the defendants have raised many of the same privilege objections that Mr.

---

[5] Indeed, at least some communications between Mr. Atherton and certain defendants have already been produced in the underlying litigation, making clear that not all of the documents sought by the subpoena are covered by privilege or, at minimum, suggesting that the privilege assertions on which Mr. Atherton's motion relies have been partially waived.  *See* Ex. 6 (NELSON_CHESHIRE_00865512); Ex. 7 (NELSON_CHESHIRE_00866219); Ex. 8 (CK00322); Ex. 9 (CK00340).

Atherton's motion asserts, *see* Ex. 4, at 2–11; Ex. 5, at 4–28.  Further, to the extent they have not raised such individual privilege objections, they have waived the privilege and Mr. Atherton has no basis for resisting production.  *See United States v. Ary*, 518 F.3d 775, 785 (10th Cir. 2008) (emphasizing that "the party asserting the work-product doctrine or attorney-client privilege must pursue all reasonable means to preserve the confidentiality of the material" and production, even involuntary production, constitutes waiver unless the party asserts the privilege promptly).

Resolving the privilege questions Mr. Atherton raises will first require a determination that the documents meet the predicates for the asserted attorney-client and work product privileges, including that the documents are "confidential matters communicated between the attorney and his or her client in the course of receiving counsel, advice, or direction with respect to the client's rights or obligations" or are "documents and tangible things . . . prepared in anticipation of litigation or for trial."  *Martensen v. Koch*, 301 F.R.D. 562, 572 (D. Colo. 2014).  Resolving Mr. Atherton's motion will also require determinations as to whether the clients on whose behalf Mr. Atherton asserts the privileges have waived the asserted privileges, including by "impliedly waiv[ing] the attorney-client privilege by placing privileged communications or material at issue or by disclosing the privileged information to a third party," including in discovery to Amazon.  *Id.* at 573; *see also, e.g.*, *In re Grand Jury Proceedings*, 616 F.3d 1172, 1184 (10th Cir. 2010) (concluding that attorney-client privilege was waived when litigant disclosed substance of attorney-client communications to government); *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 704 (10th Cir. 1998) (emphasizing that a party cannot "selectively us[e] . . . privileged documents to prove a point but then invok[e] the privilege to prevent an opponent from challenging the assertion").

Further, even if the predicates are satisfied and there has been no waiver on the above or other grounds, the asserted privileges are not absolute. The attorney-client and work-product privileges "do[] not apply where the client consults an attorney to further a crime or fraud." *In re Grand Jury Subpoenas*, 144 F.3d 653, 660 (4th Cir. 1998). The privilege may be overcome based on the crime-fraud exception if Amazon presents "prima facie evidence that . . . the client was engaged in or was planning the criminal or fraudulent conduct when it sought the assistance of counsel and that the assistance was obtained in furtherance of the conduct or was closely associated with it." *Id.* While the exception does not apply when a client consults an attorney exclusively regarding past conduct, it *does* apply (and privilege does not exist) where, as alleged here, "the assistance was use to cover up and perpetuate the crime or fraud." *Id.*; E.D. Va. ECF No. 150, ¶¶ 6, 9, 24–27, 37–38, 40–41, 43–44, 98–108, 174, 209–222 .

These are necessarily fact-intensive inquiries best considered by the issuing court, where the parties have already litigated for nearly two years through nearly 500 docket entries. The magistrate judge in the EDVA Civil Action has already presided over limited discovery related to the preliminary injunction and has resolved several related discovery motions. E.D. Va. ECF Nos. 230, 231, 301, 302, 329, 330. The same magistrate will resolve whether privilege protects many of the same documents based on Mr. Atherton's clients' assertions of privilege. *See* Exs. 4–5.

The complexity of the underlying case and the compressed discovery schedule ordered in that proceeding, *see* E.D. Va. ECF No. 455, further and conclusively support the request for transfer. *Williams*, 2019 WL 1620815, at *4–6; *Schell*, 2021 WL 1541712, at *3–5. The underlying case is a complex racketeering and fraud lawsuit involving multiple defendants located in multiple states based on more than a dozen leases and contracts secured over several years and involving

11

more than $500 million in real estate transactions. *See generally* E.D. Va. ECF No. 150. Asking this Court to "to educate itself about the complex claims . . . at issue in the Underlying Case," as it necessarily must in order to resolve the crime-fraud exception in particular, would merely waste judicial resources given Judge Buchanan's existing familiarity with the discovery issues in this case and the necessity that the complicated claims are and will be litigated before the Eastern District of Virginia.[6] *Schell*, 2021 WL 1541712, at *4. Furthermore, discovery in the underlying case is scheduled to close by March 18, 2022. E.D. Va. ECF No. 455, ¶ 2. Resolving Mr. Atherton's motion in this court would threaten to disrupt this schedule and put proceedings here in conflict with those in Virginia. Moreover, the applicability of the crime-fraud exception turns in large part on legal and factual issues that are central to the merits of Amazon's claims in the Eastern District of Virginia. This Court cannot resolve whether that exception applies without passing upon those merits issues, which the district court in Virginia finally is poised to adjudicate after years of protracted litigation.

The burden of a transfer on Mr. Atherton will be minimal. Rule 45 itself provides that his Colorado counsel may appear and represent him in the Eastern District of Virginia, alleviating any need for him to retain additional or local counsel. Fed. R. Civ. P. 45(f).[7] And the grounds for

---

[6] The underlying action in the Eastern District of Virginia was recently reassigned from Judge O'Grady to Judge Alston. E.D. Va. ECF No. 488; E.D. Va. Docket Entry Jan. 13, 2022. That reassignment does not provide a basis for denying transfer. *Schell*'s underlying case also had been reassigned, but that did not alter the efficiency of transfer as the judge presiding over the underlying case would necessarily have greater familiarity and involvement in the case than the judge assigned to hear the motion in Colorado. 2021 WL 1541712, at *3.

[7] To alleviate any travel considerations that could impose a burden on Mr. Atherton or his counsel, Amazon would not oppose Mr. Atherton or his counsel appearing telephonically to resolve his motion to quash in Virginia. The court presiding over the Eastern District of Virginia proceeding has already resolved a number of motions, including motions involving out-of-state counsel,

rejecting any travel-based objections to transfer are even more compelling here than they were in *Schell*.  The *Schell* court noted that "transfer [would] impose only a slight, if any, burden upon Movant and that any such burden is clearly outweighed by the interests of fairness, consistency, judicial economy, and speed of resolution." *Id*. (quotation marks omitted) (citing *Weddle v. Williams*, 2019 WL 1620815, at *6 (D. Colo. Apr. 15, 2019) (finding "a comparatively minimal burden on [the movant] weigh[ed] in favor of transferring")).  Here, that is particularly true because the Eastern District of Virginia and parties there have consented to counsel requests to participate in hearings remotely, *see, e.g.*, E.D. Va. ECF No. 451; E.D. Va. Docket entry Jan. 5, 2022, and the privileges Mr. Atherton assertions will in any event be fully represented and defended in the EDVA Civil Action by the clients—and named defendants there—to whom the privileges belong.

## CONCLUSION

The Court should transfer Mr. Atherton's motion to quash to the Eastern District of Virginia, where it can be resolved alongside similar motions raising privilege assertions over the same documents.

---

either on the papers or via telephone hearing in order to ease potential burden on counsel and the parties.  *See* E.D. Va. ECF Nos. 402 & 451; *see also* E.D. Va. Docket Entry Oct. 15, 2021; E.D. Va. Docket Entry Oct. 19, 2021; E.D. Va. Docket Entry Oct. 20, 2021.

Dated: February 14, 2022

    Respectfully submitted,

    */s Amanda J. Sterling*
    Amanda J. Sterling
    GIBSON, DUNN & CRUTCHER LLP
    1050 Connecticut Avenue, N.W.
    Washington, DC  20036-5306
    Telephone: (202) 955-8500
    asterling@gibsondunn.com

    *Counsel for Amazon.com, Inc. and Amazon Data Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of February, 2022, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

*/s Amanda J. Sterling*
Amanda J. Sterling